[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 22, 2005
THOMAS K. KAHN
CLERK

No. 05-11637
Non-Argument Calendar

_____

D. C. Docket No. 91-00870-CR-AJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BIENVENIDO ROA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(December 22, 2005)**

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Bienvenido Roa appeals his 89-month sentence for

conspiracy to possess with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1).  After review, we affirm.

## I.  FACTUAL BACKGROUND

### A.  Roa's Criminal Conduct

In 1991, a confidential informant ("CI") informed police that Ubaldo Mazola, one of Roa's codefendants, was interested in purchasing three to five kilograms of cocaine.   An undercover police officer met with Mazola at his residence and was introduced to Defendant Roa.   Roa warned the officer that there were guests in the house and the exchange of cocaine was not to be discussed in their presence.  After agreeing on a price of $13,500 per kilogram of cocaine, Mazola told the undercover officer that he was short on cash, but would trade his two vehicles for two kilograms of cocaine.  Mazola then offered his condominium for an additional three kilograms.  The officer agreed.

Subsequently, the undercover officer, Mazola, Defendant Roa, and the CI held several meetings to ensure the completion of the transaction.  The officer met with Mazola, Defendant Roa, and Jesus Delgado.   They all drove to an apartment used for undercover work, where they were joined by Victor Asencio.  Mazola explained that Delgado and Asencio would wait at a nearby story where they would take delivery of the cocaine.

2

After Mazola and Defendant Roa inspected the five kilograms of cocaine, Mazola instructed Defendant Roa and the CI to make the delivery. Defendant Roa carried the cocaine to the vehicles, and all four parties headed to the store where Delgado and Asencio were waiting. Mazola and Defendant Roa were taken into custody at a gas station near the store. The CI delivered the cocaine to Delgado and Asencio, and the two men were arrested shortly thereafter.

### B. Roa's Guilty Plea

In December 1991, a federal grand jury indicted Roa, along with three codefendants, charging him with: (1) conspiracy to possess with the intent to distribute "a detectable amount of cocaine," in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count 1); and (2) possession with the intent to distribute "a detectable amount of cocaine," in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 2).

In March 1992, Roa pled guilty to Count 1 pursuant to a written plea agreement in which the government agreed to dismiss Count 2. The plea agreement did not discuss the quantity of drugs involved. However, the agreement stated that: "The Defendant understands and agrees that the court *must* impose a statutory minimum term of ten (10) years and may impose a statutory maximum term of imprisonment of up to life." (emphasis added).

Roa, who was out on bond, did not appear for sentencing on May 12, 1992, and a warrant was issued for his arrest. Roa was subsequently extradited from the Dominican Republic and placed under arrest on November 18, 2004.

**C.    Sentencing**

At sentencing, the district court determined that Roa's base offense level was 32, pursuant to U.S.S.G. § 2D1.1(c)(4), finding Roa responsible for at least 5 but less than 15 kilograms of cocaine. The district court adjusted Roa's offense level to 30 based on a two-level reduction pursuant to § 5C1.2(a)(1)-(5) (safety-valve) and § 2D1.1(b)(7), a two-level downward adjustment pursuant to § 3E1.1(a) for acceptance of responsibility, and a two-level increase pursuant to § 3C1.1 because Roa willfully obstructed justice during the course of sentencing by escaping to the Dominican Republic and failing to appear to his initial sentencing hearing. Based on a total offense level of 30 and a criminal history category of I, the district court determined that Defendant Roa's Guidelines range was 97-121 months' imprisonment.

Roa argued for a sentence below the advisory Guidelines range because of his age, health, and the nature of the offense. Additionally, Roa argued that he had already spent a total of 15 months in custody – four months in custody when he was arrested in 1991, and several months in prison in the Dominican Republic

4

while the government sought Roa's extradition to the United States.

The district court determined that it would sentence Roa based on the advisory Guidelines range, which it thought was "sufficiently punitive to deter future criminal conduct and to take into account all the factors set forth in Section 3553, Subsection A." The district court sentenced Roa to 89 months' imprisonment, which was below the low end of his Guidelines range of 97-121 months, in order to credit Roa with the amount of time that he spent in custody in the Dominican Republic awaiting extradition. The district court further stated that it "considered Mr. Roa's medical condition, including his hypersensitive cardiac illness and ventricular arrhythmia," but did not find that "his health conditions merit[ed] a sentence beyond that which is prescribed in the advisory Guidelines." The district court stated that it chose not to depart further from the Guidelines range "in the exercise of [its] discretion," and the district court did not believe a lower sentence was "appropriate."

Directly after the district court imposed the 89-month sentence, Roa first objected to the base offense level of 32, arguing that he should have had a base offense level of 12. Roa pointed out that his indictment did not allege, and he did not stipulate in his plea agreement, to the quantity of cocaine that resulted in a base offense level of 32. The district court overruled his argument, stating that post-

United States v. Booker, 125 S. Ct. 738 (2005), district courts may continue to make fact findings under an advisory guidelines system, as follows:

> You know, the so-called Apprendi, Blakely, Booker objections are rejected based on binding Eleventh Circuit precedent following Booker, and I think the Eleventh Circuit has said that judges can continue to make factual findings in imposing a reasonable sentence and taking into account the advisory Guidelines.

Furthermore, as discussed more later, Roa filed a statement in support of his safety-valve reduction, admitting that he participated in a conspiracy involving five kilograms of cocaine.

## II. DISCUSSION

On appeal, Roa argues the district court erred by increasing his sentence based on facts that were not charged in the indictment and neither admitted by him nor proven beyond a reasonable doubt. Specifically, he argues that because the indictment charged him with intent to distribute a *detectable amount* of cocaine and his plea agreement did not stipulate the quantity of drugs involved, the district court was prohibited from increasing his base offense level based on its drug quantity findings. Roa further argues that the district court erred in concluding that Booker allowed for judicial fact finding so long as the sentencing guidelines were applied in an advisory manner. Roa states that the district court "got confused" with the remedy of treating the Guidelines as merely advisory, and that Blakely

6

held that an enhanced sentence under the Guidelines, whether mandatory or not, that is based on judicial fact-finding violates the Sixth Amendment.

Under Booker, "the Sixth Amendment right to trial by jury is violated where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). The Supreme Court held that the mandatory nature of the Federal Sentencing Guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. Booker, 125 S. Ct. at 749-52. But, the Supreme Court also stated, "[i]f the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment." Id. at 750.

In a second and separate majority opinion in Booker, the Court concluded that, to best preserve Congress's intent in enacting the Sentencing Reform Act of 1984, the appropriate remedy was to "excise" two specific sections—18 U.S.C. § 3553(b)(1) (requiring a sentence within the guideline range, absent a departure) and 18 U.S.C. § 3742(e) (establishing standards of review on appeal, including de novo review of departures from the applicable guideline range)—thereby

7

effectively rendering the Sentencing Guidelines advisory.  Id. at 764.

In Rodriguez, this Court made it clear that the decisive factor that makes pre-Booker sentencing problematic is not extra-verdict enhancements. 398 F.3d at 1301.  Rather, Booker error is "that there were extra-verdict enhancements used in a mandatory guidelines system." Id. at 1300.  This Court stated that "[e]xtra-verdict sentence enhancements are still to be used.  The change is the role of the [U.S. Sentencing Guidelines Manual] range in the sentencing process." Id. at 1302.  And, this Court noted, all nine justices in Booker agreed that using "extra-verdict enhancements in an advisory guidelines system is not unconstitutional." Id. at 1301.

Here, the district court applied the Guidelines in an advisory manner.   Thus, the district court was permitted to determine the Guidelines range and then a reasonable sentence based on judicially-found facts.

In any event, Roa admitted to being involved in a conspiracy to distribute five kilograms of cocaine.  Specifically, Roa provided the district court with a safety valve statement in which he admitted to being involved in a conspiracy involving five kilograms of cocaine.  In the statement, Roa wrote:

> In 1991 I was visiting the U.S. when I was contacted by Ubaldo Mazola who me to come to Miami. . . Mazola introduced me to a person I later learned when I was arrested, was an informant, to discuss the purchase of

cocaine. It was negotiated that Mazola would trade two cars and an apartment for five kilograms that were furnished by an undercover agent.

Thus, the district court properly imposed a sentence using the quantity of drugs Roa admitted to be involved in his offense.

For the above reasons, we affirm Roa's 89-month sentence.

AFFIRMED.